# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 10-CV-1659 (JFB) (AKT)

_____

COUNTY OF NASSAU, ET AL.,

Plaintiffs,

VERSUS

STATE OF NEW YORK, ET AL.,

Defendants.

_____

**MEMORANDUM AND ORDER**
June 14, 2010

_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Nassau County, the Nassau County Board of Elections ("the Nassau BOE"), John DeGrace, and William Biamonte (collectively "plaintiffs" or "Nassau") bring this proceeding under Article 78 and § 3001 of the New York Civil Practice Law and Rules ("CPLR") against defendants New York State ("NYS"), the New York State Board of Elections ("NYS BOE"), James A. Walsh, Douglas A. Kellner, Evelyn A. Aquila, and Gregory P. Peterson (collectively "defendants").[1]  Plaintiffs have moved to remand this case to New York State Supreme Court, Nassau County.  Defendants have cross moved to dismiss the case for improper venue or, in the alternative, to transfer the case to the United States District Court for the Northern District of New York.

As set forth below, the Court grants plaintiffs' motion to remand this case to state court.  Plaintiffs' claims (1) do not assert a federal cause of action, (2) necessarily raise a substantial question of federal law, or (3) come within the "artful pleading doctrine."  As such, there is no federal jurisdiction over this case, and remand is required.  Because the Court lacks jurisdiction and remands the case, it denies defendants' motions as moot.

---

[1]  Plaintiff DeGrace is the Nassau County Republican Election Commissioner.  Plaintiff Biamonte is the Nassau County Democratic Election Commissioner.  The individual defendants are the commissioners of the NYS BOE.

## I. Background

### A. HAVA and ERMA

Central to the resolution of the pending motions is the interaction between a federal statute, the Help America Vote Act ("HAVA"), 42 U.S.C. § 15301, *et seq.*, and a state statute, the Election Reform and Modernization Act of 2005 ("ERMA").

### 1. HAVA

Congress enacted HAVA in 2002 in response to problems identified during the 2000 presidential election. *See generally Loeber v. Spargo*, No. 1:04-CV-1193 (LEK/RFT), 2008 WL 111172, at *2 (N.D.N.Y. Jan. 8, 2008); *Espada v. N.Y. Bd. of Elections*, No. 07 Civ. 7622 (SAS), 2007 WL 2588477, at *3 (S.D.N.Y. Sept. 4, 2007). Title I of HAVA, 42 U.S.C. §§ 15301-06, provides for federal payments to states to allow the states to replace punch card and lever voting machines and to improve election administration. Title II, 42 U.S.C. §§ 15321-15472, provides for, *inter alia*, the establishment of an Election Assistance Commission to "serve as a national clearinghouse and resource for the compilation of information and review of procedures with respect to the administration of Federal elections." 42 U.S.C. § 15322.

Most relevant to this case, Title III of HAVA sets minimum requirements for federal elections. 42 U.S.C. §§ 15481-15512. Particularly important here is § 15481, which set standards for voting systems in federal elections. Under § 15481, "the voting system (including any lever voting system, optical scanning voting system, or direct recording electronic system)" must, *inter alia*, allow the voter to correct any errors on the ballot before the ballot is cast, notify the voter if the voter selects more than one candidate for an office, have an audit capacity, and be accessible to individuals with disabilities. *See* § 15481. The statute, however, leaves it to the states to determine how to implement Title III's requirements. *See* § 15485 ("The specific choices on the methods of complying with the requirements of this subchapter shall be left to the discretion of the State.").

Additionally, Title IV of HAVA gives the Attorney General of the United States the power to bring a civil action for declaratory and injunctive relief against a state for violations of Title III. 42 U.S.C. § 15511. Title IV also requires states receiving funds under HAVA to establish administrative grievance procedures. 42 U.S.C. § 15512.[2]

### 2. ERMA

On July 12, 2005, the New York State Legislature passed the Election Reform and Modernization Act of 2005 ("ERMA"). *See* 2005 N.Y. Sess. Law Ch. 181 (McKinney). The statute was amended in 2007. *See* 2007 N.Y. Sess. Law Ch. 506 (McKinney). ERMA implements the requirements of HAVA in New York State. Among other things, it gives the New York State Board of Elections, a defendant in the instant case, the power to determine whether a voting machine complies with HAVA. *See* N.Y. Elec. Law § 7-201.

### 3. The Implementation of HAVA in New York State and the Northern District Litigation

---

[2] Titles V through IX of HAVA are irrelevant to this case. *See* 42 U.S.C. §§ 15521-45.

The deadline for implementing HAVA was January 1, 2006. 42 U.S.C. § 15481(d). Although ERMA had passed in the summer of 2005, "public hearing requirements caused [the NYS BOE] to miss the January 1, 2006 deadline for non-lever voting machine implementation." (DeGrace/Biamonte Aff. ¶ 8.)[3] New York was the only state in the country not to implement HAVA by the January 1, 2006 deadline. *See generally* Virginia Smith Rosborough, *Take the Counties into Account: The Help America Vote Act in New York State*, 18 Alb. L. J. Sci. & Tech. 711, 712 (2008).

On March 1, 2006, the United States sued the NYS BOE and NYS in the Northern District of New York for non-compliance with HAVA. (Boivin Decl. ¶ 4.) Since 2006, Judge Sharpe of the Northern District has entered three remedial orders directing the NYS BOE and NYS to comply with HAVA. (*See* Boivin Decl. Exs. A-C.) According to plaintiffs' memorandum of law in support of their motion to remand, Nassau County has twice tried to intervene in the action in the Northern District, but both of those applications have been denied. (Pl.'s Mem. of Law in Support of Mot. to Remand at 2.)

## B. The Instant Case

Plaintiffs commenced this action on March 23, 2010 by filing a complaint in New York State Supreme Court, Nassau County. Nassau County currently uses lever voting machines and wants to continue using lever machines. (Compl. ¶¶ 36, 42.) The complaint alleges that even though HAVA does not require the replacement of lever voting machines, ERMA permits only the use of electronic,

computerized voting machines approved by the NYS BOE. (*Id*. ¶ 48.) According to the complaint, since at least February 2006, defendant NYS BOE has been attempting to work with outside contractors to develop a computerized voting system employing optical-scan technology. However, these efforts allegedly have been plagued with problems and delays. (*See generally id*. ¶¶ 55-76.) Most recently, on December 15, 2009, the commissioners of the NYS BOE certified two different voting systems, although, in doing so, they noted potential security and documentation issues with the systems. (*Id*. ¶ 73.) The NYS BOE then directed local election boards to choose one of the certified systems to use. (*Id*. ¶ 74.)

Although the Nassau BOE eventually notified the NYS BOE of its preferred system, it does not want to use electronic voting systems at all, citing security and reliability concerns. (*See generally id*. ¶¶ 86-93; 99; 115-143.) Plaintiffs assert that the lever voter machines currently in use are more reliable and less susceptible to fraud. (*Id*. ¶ 115.) Pursuant to Article 78 and New York CPLR § 3001, the CPLR's declaratory judgment provision, the complaint seeks:

(1) a declaratory judgment, that by requiring the use of electronic voting technology, ERMA violates Article I, Section I of New York State Constitution which prohibits disenfranchisement (*id*. ¶¶ 144-50);

(2) a declaratory judgment that ERMA violates Article II, Section 8 of the New York State Constitution, which requires bipartisanship in the counting and recording of votes (*id*. ¶¶ 151-60);

---

[3] This affidavit is attached to the complaint.

(3) a declaratory judgment that ERMA violates the New York State Constitution by requiring local boards of election to delegate the sovereign function of supervising elections to private parties (*id*. ¶¶ 161-66);

(4) a declaratory judgment that ERMA violates the New York State Constitution by requiring local boards of elections to use electronic voting machines that violate the right to cast a secret ballot (*id*. ¶¶ 167-77);

(5) a declaratory judgment that defendants' actions violate the New York State Civil Rights Act (*id*. ¶¶ 178-91);

(6) a declaratory judgment that defendants' actions in certifying machines on December 15, 2009 were arbitrary, capricious, an abuse of discretion, and contrary to law (*id*. ¶¶ 192-202); and

(7) that, in the event plaintiffs must comply with ERMA, they not be required to deploy the new ERMA electronic voting machines until the Fall of 2011 at the earliest. (*Id*. Prayer for Relief (h).)

The complaint does not refer to the Northern District litigation. Defendant NYS BOE removed the case to this Court on April 14, 2010. Twelve days later, the Court held a pre-motion conference regarding the pending motions and set a briefing schedule.

Plaintiffs filed their motion to remand on May 13, 2010; defendants filed their motions to dismiss or, in the alternative, to change venue, on the same day. All motions were fully submitted on June 3, 2010, and the Court heard oral argument on June 9, 2010.[4]

## C. The All Writs Act Proceeding in the Northern District

The same day this Court held a pre-motion conference on the pending motions, the NYS BOE filed an order to show cause in the Northern District litigation requesting that the court issue an injunction against the plaintiffs in this case pursuant to the All Writs Act, 28 U.S.C. § 1651. Specifically, the NYS BOE requested that plaintiffs here be compelled to accept the electronic, computerized systems and implement those systems for the Fall 2010 primary and general elections. (*See* Collins Dec. Ex. A.)[5] On May 20, 2010, Judge Sharpe issued an order enjoining the plaintiffs here from "taking further action interfering with implementation of the previous Remedial Orders of this Court in this case" and setting forth a schedule of compliance detailing the steps Nassau must undertake before this fall's election. (*See id*.) In his order, Judge Sharpe stated that the previous remedial orders in the Northern District litigation made "clear that this Court has previously found that lever

---

[4] Only the NYS BOE and the individual defendants filed a brief opposing the remand motion. On June 7, 2010, four days after the motions were fully submitted, NYS filed a letter with the Court explaining that it intended to join in the NYS BOE's motion but, "through inadvertence," had failed to make a "'me too' filing." Despite NYS's failure to make a timely filing, the Court will view the remand motion as being opposed by all defendants in this case.

[5] Both the State of New York and the United States subsequently joined in the NYS BOE's application. (*See* Collins Dec. Ex. A at 2.)

machines as utilized in the State of New York do not comply with [HAVA] . . . ." (*Id*. at 3.) Nassau is currently appealing Judge Sharpe's May 20 order to the Second Circuit. (Pl.'s Reply Mem. of Law at 3.)

## II. MOTION TO REMAND[6]

The Court will address plaintiffs' remand before addressing defendants' motions because the remand motion challenges the Court's jurisdiction to hear this case. If the Court does not have jurisdiction, it does not have power to decide the defendants' motions. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) ("Because a holding that the district court lacked removal jurisdiction would end our inquiry, we first address the district court's denial of [plaintiff's] motion to remand the case to state court for lack of jurisdiction."); *see also Cotter v. Milly LLC*, No. 09 Civ. 04639(PGG), 2010 WL 286614, at *2 (S.D.N.Y. Jan. 22, 2010) ("Because the issue of proper removal involves this Court's subject matter jurisdiction, it must be decided prior to [defendant's] motion to dismiss under Rule 12(b)(6).").

### A. Standard

Generally, a case may be removed from state court to federal court "only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." *Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 8 (E.D.N.Y. 2005) (citing 28 U.S.C. §

1441(a)); *see also* 28 U.S.C. § 1441. If a federal district court determines that it lacks subject matter jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c). "When a party challenges the removal of an action from state court, the burden falls on the removing party 'to establish its right to a federal forum by competent proof.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig*., No. 1:00-1898, MDL 1358 (SAS), M 21-88, 2006 WL 1004725, at *2 (S.D.N.Y. Apr. 17, 2006) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979)). Further, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941)); *accord Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367 (S.D.N.Y. 2006).

Here, defendants argue that removal was proper based on federal question jurisdiction. Specifically, defendants contend that the complaint, although styled as a state law challenge to ERMA, actually seeks relief from the requirements of HAVA, a federal statute. (*See, e.g.*, Defs.' Mem. of Law at 7; *see also* Notice of Removal ¶¶ 6-7.)

A court determines whether federal subject matter jurisdiction exists by examining the "well-pleaded" allegations in the complaint. *Sullivan v. Am. Airlines*, 424 F.3d 267, 271 (2d Cir. 2005). Federal question jurisdiction exists where the complaint (1) asserts a federal cause of action, or (2) presents state

---

[6] Unless otherwise noted, all references to memoranda of law in this section refer to memoranda relating to the motion to remand, not to the motion to dismiss or change venue.

claims that "'necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Broder*, 418 F.3d at 194 (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). Additionally, under the "artful-pleading doctrine," a court may construe a complaint that asserts only state law claims as asserting a federal claim if the "plaintiff's suit is, in essence, based on federal law." *Sullivan*, 424 F.3d at 271-72.[7]

However, federal jurisdiction does not exist simply because a state law claim may implicate a federal issue. *See, e.g., See Empire Healthchoice Assurance v. McVeigh*,

547 U.S. 677, 701 (2006) (explaining that "it takes more than a federal element 'to open the arising under door.'" (quoting *Grable*, 545 U.S. at 313)); *Ins. Corp. of N.Y. v. Monroe Bus Corp.*, 491 F. Supp. 2d 430, 434 (S.D.N.Y. 2007) ("The 'mere presence' of a federal issue does not, however, create federal question jurisdiction over a state cause of action." (citing *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986))). Nor is federal jurisdiction present because there is a federal defense to a plaintiff's state law claim. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) ("A defense is not part of a plaintiff's properly pleaded statement of his or her claim."); *City of Rome*, 362 F.3d at 174 ("The mere existence or invocation of a federal defense does not furnish a basis for [federal] jurisdiction to attach.").

## B. Analysis

Here, the complaint does not assert a federal cause of action. Instead, defendants argue that federal jurisdiction exists because (1) plaintiffs' claims necessarily involve substantial federal questions, and (2) the artful pleading doctrine applies. (See Defs.' Mem. of Law at 4-5; 6-7.)

### 1. Substantial Federal Question

As noted above, federal subject matter jurisdiction may exist where a state law claim (1) necessarily raises a stated federal issue, (2) actually disputed and substantial, and (3) "'which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Broder*, 418 F.3d at 194 (quoting *Grable*, 545 U.S. at 314). The Supreme Court has described this basis for federal subject matter jurisdiction as "special,"

---

[7] Furthermore, federal jurisdiction may exist when the plaintiff brings a declaratory judgment action seeking "to forestall a coercive suit under federal law threatened by a defendant . . . ." and the court determines that the defendant would be able to assert a right to recover under federal law. *See City of Rome v. Verizon Commc'ns*, 362 F.3d 168, 175 n.3 (2d Cir. 2004); *see also Pub. Serv. Comm'n v. Wycoff*, 344 U.S. 237, 248 (1952) ("Where the complaint in an action for declaratory judgment seeks in essence a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court."). Defendants do not argue that this rule applies here. Even if they did, the Court would reject that argument. Although plaintiffs seek a declaratory judgment, they are not seeking to forestall a lawsuit. Instead, the relief sought in the declaratory judgments concerns relief from enforcement of a state statute based upon alleged violations of state law.

"small," and "slim." *See Empire Healthchoice Assurance*, 547 U.S. at 699, 701. Nonetheless, it does apply in some circumstances.

In *Broder*, for example, the plaintiff sued Cablevision for breach of contract and a violation of the New York General Business Law. The plaintiff alleged that Cablevision had failed to disclose the fact that it offered a seasonal subscription rate and that, because of Cablevision's failure to disclose, he had paid a higher-priced, full subscription rate for cable service at his summer home. Although the complaint only explicitly asserted state law causes of action, the Second Circuit affirmed the district court's ruling that federal question jurisdiction existed and that removal was therefore proper. *See* 418 F.3d at 196. First, the court explained that the complaint necessarily raised a federal issue. Specifically, the complaint alleged that Cablevision had breached a contract term that incorporated by reference a federal statute, 47 U.S.C. § 543(d), which required cable operators to set uniform rates. The General Business Law claim was also predicated in part on the failure to provide the uniform rates required by the federal statute. *See* 418 F.3d at 194-95. Second, the federal issues were "actually disputed and substantial" because whether the federal uniform rate requirement applied was in dispute and implicated "the complex federal regulatory scheme applicable to cable television rates . . . ." *Id*. at 195. Third, concerns about federal encroachment on state law issues were not present because the situation in *Broder*, *i.e.*, a New York breach of contract and General Business Law suit predicated on an alleged violation of a federal statute that does not include its own private right of action, was unlikely to recur frequently. 418 F.3d at 196 ("We think it is likely to be the rare New York breach-of-contract action or suit under GBL § 349 that seeks to assert a private right of action for violation of a federal law otherwise lacking one."); *see also Grable*, 545 U.S. at 315 (holding that federal jurisdiction existed over state law quiet title action where the "only legal or factual issue contested" concerned whether plaintiff had been given proper notice of IRS's sale of the property as required by the tax code).

Here, unlike *Broder* and *Grable*, plaintiffs' claim here does not necessarily raise a federal issue nor is a federal issue "actually disputed and substantial." The central issues in this case concern whether the computerized voting machines violate the New York State Constitution and whether defendants' actions violate Article 78 and the New York Civil Rights Law. (*See generally* Compl. ¶¶ 144-202.) The substantive references to HAVA make up six paragraphs (¶¶ 43-48) of the 202-paragraph complaint and are provided simply as background to ERMA. Conversely, in *Grable*, the "only legal or factual issue" concerned whether the IRS had complied with a notice provision in the tax code in selling the plaintiff's property. 545 U.S. at 315. Similarly, in *Broder*, the plaintiff's claims required resolution of questions regarding the applicability of the federal uniform rate requirement. 418 F.3d at 195. Indeed, as part of the *Broder* plaintiff's prayer for relief, he sought a declaratory judgment establishing that Cablevision's actions violated the federal uniform rate requirement. *See id.* Here, moreover, the HAVA statute gives the states substantial discretion on how to implement its requirements. *See* 42 U.S.C. § 15485 ("The specific choices on the methods of complying with the requirements of this subchapter shall be left to the discretion of the State."); *see*

also § 15484 ("The requirements established by this subchapter are minimum requirements and nothing in this subchapter shall be construed to prevent a State from establishing election technology and administration requirements that are more strict than the requirements established under this subchapter so long as such State requirements are not inconsistent with the Federal requirements under this subchapter or any law described in section 15545 of this title."). HAVA does not prescribe a particular type of voting machine, nor does have it have anything to say about any specific requirements as to the manner in which New York public officials must carry out their official duties. *Cf.* N.Y. CPLR § 7803 (providing, *inter alia*, a procedure to determine whether a state body or officer acted "arbitrar[ily]," "capricious[ly]," or abused his or her discretion). Thus, the Court need not necessarily address HAVA to decide, for example, whether the computerized voting machines comply with state law or whether defendants have acted arbitrarily and capriciously under New York law in certifying the computerized machines. *Cf. Elmaliach v. Bank of China Ltd.*, No. 09 Civ. 2130 (PGG), 2010 WL 1172829, at *6 (S.D.N.Y. Mar. 26, 2010) ("Courts in this Circuit have made clear that the exercise of federal jurisdiction is inappropriate where 'no cause of action . . . necessarily stands or falls based on a particular interpretation or application of federal law.'" (quoting *Sung v. Wasserstein*, 415 F. Supp. 2d 393, 406 (S.D.N.Y. 2006))); *Citigroup, Inc. v. Wachovia Corp.*, 613 F. Supp. 2d 485, 495 (S.D.N.Y. 2009) (remanding case where "[n]othing in the Complaint suggests that [plaintiff] would be required to establish the meaning of any federal statute to succeed on its claims for breach of contract and tortious interference with contract"); Caggiano v. *Pfizer, Inc.*, 384 F. Supp.2d 689, 690 (S.D.N.Y. 2005) (finding

federal question jurisdiction did not exist where "a jury could find defendants liable on each and every one of the eight claims without being required to determine whether any federal law had been violated").[8] Thus, the complaint does not necessarily raise a substantial and disputed federal issue.

Finally, even assuming there is the potential for an issue involving HAVA to arise, assuming federal jurisdiction would run the risk of "'disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Broder*, 418 F.3d at 194 (quoting *Grable*, 545 U.S. at 31). As noted above, Congress expressly left much of the implementation of HAVA to the states. *See generally Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1172 (11th Cir. 2008) ("Reading HAVA Title III as a whole, we are not convinced that its objectives are to federalize voter identification standards. First, at multiple points throughout the statute, HAVA dynamically incorporates state law requirements instead of promulgating national standards. *See* 42 U.S.C. § 15482(a)(4); §

---

[8] Plaintiffs also request, if the Court finds ERMA complies with the New York State Constitution, that they not be required to deploy electronic voting machines until the Fall of 2011. Defendants argue that this creates an issue of federal law because New York must comply with HAVA by November 2010. (*See* Collins Decl. ¶¶ 17-18.) This, however, does not necessarily raise a substantial and disputed issue of federal law. The HAVA compliance deadline will only be relevant if the Court finds ERMA complies with the New York State Constitution. Moreover, the relevance of the HAVA compliance deadline would then essentially be as a preemption defense to the relief sought by plaintiffs. As noted above, it is well settled that a defense cannot provide a basis for federal jurisdiction.

15483(a)(5)(A)(iii); § 15484; § 15485. Repeatedly adapting state laws does not reflect an intent to prescribe a uniform national standard in the general legislative scheme."). By contrast, in *Grable*, the disputed issue involved a provision of the tax code, "an important issue of federal law that sensibly belongs in a federal court." 545 U.S. at 315. Similarly, *Broder* involved the complex federal regulatory scheme for cable televison. Thus, in short, finding federal jurisdiction in a case like this one—where HAVA lingers in the background, but is not the central issue—would disturb Congress's judgment to leave substantial discretion to the states in implementing HAVA.[9] In sum, defendants have not established that this case fits into the "special and small category"[10] of cases in which the complaint does not allege a federal cause of action but nonetheless necessarily raises a substantial and disputed federal issue.

### 2. The Artful Pleading Doctrine

Defendants also argue that this case falls within the so-called artful pleading doctrine. Defendants assert that, although plaintiffs pled only state law claims, they actually seek relief from compliance with HAVA "in direct contravention of three . . . federal court orders issued prior to the filing of their pleading and one . . . subsequent to the filing." (*See* Defs.' Mem. of Law at 7.) For the reasons set forth below, the Court rejects defendants' argument.

"The artful pleading doctrine, a corollary to the well-pleaded complaint rule, rests on the principle that a plaintiff may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law." *Sullivan*, 424 F.3d at 271. The precise scope of the artful pleading doctrine is unclear, but, at least in this circuit, it includes within it the doctrine of "complete preemption." *Id.* at 272 & n.4. Additionally, in *Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998), the court held that the artful pleading doctrine provided a basis for federal jurisdiction on the plaintiffs' breach of warranty claim because the "agreements" containing the warranties were actually federal tariffs. 138 F.3d at 56. Other circuits, however, have held that the artful pleading doctrine and complete preemption are coextensive,[11] and, in *Sullivan*, the Second Circuit declined to "try to trace the artful-pleading doctrine's outer boundaries." 424 F.3d at 272 n.4.

Here, the basis for defendants' assertion that the artful pleading doctrine applies is unclear. They do not argue that HAVA completely preempts state law. However, even if they made such an assertion, the Court would reject that argument. "Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims--i.e., completely

---

[9] Another reason that the federal interest is relatively weak here is because a federal department or agency is not involved in this lawsuit. *Cf. Empire Healthchoice*, 547 U.S. at 700 (distinguishing *Grable* and finding no federal jurisdiction where plaintiff's claim "was triggered, not by the action of any federal department, agency or service, but by the settlement of a personal-injury action . . . .").

[10] *EmpireHealth Choice*, 547 U.S. at 699.

[11] *See, e.g.*, *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008); *M. Nahas & Co. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 612 (8th Cir. 1991)

preempted." *Sullivan*, 424 F.3d at 272.

Complete preemption does not apply to HAVA. Complete preemption exists where Congress has expressly provided for it or where "the federal statutes at issue provide[] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003); *Port Auth. of N.Y. & N.J. v. Am. Warehousing of N.Y., Inc.*, No. 04 Civ. 6092GEL, 2004 WL 2584886, at *2 (S.D.N.Y. Nov. 10, 2004). Significantly, again, Title III of HAVA expressly leaves "[t]he specific choices on the methods of complying with the requirements of this subchapter . . . to the discretion of the State." 42 U.S.C. § 15485; *see also* § 15484. Thus, different states will implement HAVA in different ways. HAVA is not a statute whose purpose is to provide a "uniform regulatory regime" designed to ensure that voting systems or election procedures generally become an "exclusively . . . federal concern." *Cf. Aetna Health v. Davila*, 542 U.S. 200, 208 (2004) (holding plaintiffs' state law causes of action completely preempted by ERISA (quotation omitted)). Moreover, there is no indication that HAVA provides any exclusive cause of action or, for that matter, any private right of action with respect to voting machines and procedures,[12] so as to suggest that Congress intended HAVA to have extraordinary preemptive force. *Cf. Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004) (finding complete preemption applied where Copyright Act created an exclusive cause of action for copyright infringement because Copyright Act "lays out the elements, statute of limitations, and remedies for copyright infringement"); *Citigroup, Inc. v. Wachovia Corp.*, 613 F. Supp. 2d 485, 494 (S.D.N.Y. 2009) ("Unlike the LMRA, the ERISA, and the NBA, [the statue in question] does not provide an exclusive cause of action for [plaintiff's] claims, and it certainly does not set forth procedures and remedies governing such exclusive causes of action. Indeed, counsel for defendants conceded at oral argument that [the statute in question] does not provide for *any* cause of action. Complete preemption therefore does not apply in this case.") In short, there is no indication Congress sought to transform all state law claims dealing with the administration of elections or voting systems into federal claims. In fact, the opposite appears to be true given that Congress gave the states a significant amount of discretion as to how to implement HAVA. Therefore, the complete preemption doctrine does not apply.

To the extent that defendants argue that the orders in the Northern District litigation bring this case within the scope of the artful pleading doctrine or otherwise create a basis for federal question jurisdiction,[13] that

---

[12] In *Bay County Democratic Party v. Land*, 347 F. Supp. 2d 404 (E.D. Mich. 2004), the court held that a provision of HAVA allowing the casting of provisional ballots created a private right that was enforceable through 42 U.S.C. § 1983. 347 F. Supp. 2d at 434. In doing so, however, the court noted that "other sections of HAVA, perhaps a majority of them, primarily regulate the conduct of officials involved in the voting process." *Id.* at 426.

[13] (*See, e.g.*, Collins Dec. ¶ 21 ("No amount of artful pleading on the part of counsel can disguise the fact that the state court action removed to this court raises several federal questions, many of which have been resolved against Nassau County by Judge Sharpe."); *id.* ¶ 23 ("Nassau County's pleadings in state court seek relief which in

argument is misplaced. It is well established that preclusion defenses—such as *res judicata* and collateral estoppel—do not provide a basis for federal jurisdiction. In *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470 (1998), for example, the defendants removed to federal court a state-court action based on a mortgage. They argued that federal jurisdiction existed because a bankruptcy court's prior orders had allegedly extinguished the plaintiffs' rights under the mortgage. The Supreme Court held that removal was improper because a defense, such as the *res judicata* or claim preclusive effect of a prior federal judgment, cannot be a basis for federal jurisdiction. 522 U.S. at 478 ("In sum, claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under § 1441(b). Such a defense is properly made in the state proceedings, and the state courts' disposition of it is subject to this Court's ultimate review."). The Second Circuit has recently stated that *Rivet*'s rule applies not only to claim preclusion but also to other affirmative defenses, such as issue preclusion or collateral estoppel. *See Domnister v. Exclusive Ambulette, Inc.*, - - - F.3d - - -, Docket No. 08-4387-cv, 2010 WL 2219664, at *6 (2d Cir. June 4, 2010) ("The Court's holding in *Rivet* applies with equal force to other affirmative defenses, including those based on issue preclusion or statute of limitations."). In sum, the preclusive effect of any other federal litigation is not a basis for removal.

Additionally, defendants appear to argue that federal question jurisdiction exists because plaintiffs request, if the Court finds

ERMA complies with the New York State Constitution, that they not be required to deploy electronic voting machines until the Fall of 2011. Defendants argue that this conflicts with HAVA because New York State must be in full compliance with HAVA by November 1, 2010.[14] However, ordinary preemption principles—as opposed to complete preemption, *see supra*—do not create a federal question. *See Sullivan*, 424 F.3d at 273 ("The Supreme Court has left no doubt, however, that a plaintiff's suit does not arise under federal law simply because the defendant may raise the defense of ordinary preemption."); *Marcus*, 138 F.3d at 52-53 (explaining that "[a] claim that federal law preempts all state law remedies is usually only a defense to the state law action, and a case generally may not be removed to federal court on that basis, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue"); *see also Am. Warehousing of N.Y., Inc.*, 2004 WL 2584886, at *3 (remanding case and noting that "if [defendant] has legitimate federal defenses that would prevail in this Court, those defenses are equally applicable in state court under the Supremacy Clause of the Constitution.").

Accordingly, plaintiffs' complaint does not (1) assert a federal cause of action; (2) necessarily raise a substantial and disputed issue of federal law; or (3) fall within the

---

essence modifies various existing federal court orders, without ever having mentioned their existence. Ignoring those orders which must be modified might be artful pleading . . . .").)

[14] As noted above, the original deadline for compliance with HAVA was January 1, 2006. However, Congress has granted waivers to states that have had difficulty complying and the current deadline is November 1, 2010. (*See* Collins Dec. ¶¶ 17-18.)

scope of the artful-pleading doctrine.[15] Therefore, there is no basis for federal subject jurisdiction, and the case must be remanded to state court.

### III. MOTION TO DISMISS AND TRANSFER VENUE

Because the Court lacks subject matter jurisdiction over this case, it denies as moot the motion to dismiss or transfer.

### IV. CONCLUSION

For the reasons set forth above, the Court grants plaintiffs' motion to remand this case to state court. Defendants' motions are denied as moot. The Clerk of the Court shall remand the case to New York State Supreme Court, Nassau County.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 14, 2010
Central Islip, New York

* * *

Attorneys for plaintiffs are John Ciampoli, Alpa Sanghvi, and Peter James Clines, Nassau County Attorney's Office, State of New York, 1 West Street, Mineola, NY 11501. Attorneys for defendants are Derrick Jeffrey Robinson, New York State Office of the Attorney General, 200 Old Country Road, Suite 460, Mineola, NY 11501, and Paul Michael Collins, New York State Board of Elections, Office of Special Counsel, 40 Steuben Street, Albany, NY 11207.

---

[15] Additionally, the fact that plaintiffs brought this case as an Article 78/declaratory judgment proceeding also arguably counsels against assuming federal jurisdiction in this case. Some federal courts have stated that the New York State Supreme Court is the exclusive forum for Article 78 proceedings and, accordingly, have declined to exercise federal jurisdiction over those claims. *See, e.g., Fitzgerald v. Thompson*, No. 07 CV 6851 (BSJ), 2009 WL 29599, at *8 (S.D.N.Y. Jan. 5, 2009) ("New York law, however, vests jurisdiction over Article 78 proceedings solely in state courts . . . . Accordingly, the Court concludes that it lacks jurisdiction to consider Plaintiffs' . . . claim." (citations omitted)). Other courts, however, have disagreed and stated that Article 78 claims may be brought in federal court, at least where those claims relate to the deprivation of federal constitutional rights. *See, e.g., Casale v. Metro. Trans. Auth.*, No. 05 Civ. 4232 (MBM), 2005 WL 3466405, at *5-6 (S.D.N.Y. Dec. 19, 2005) (indicating that federal jurisdiction could exist over Article 78 claim but remanding case on other grounds). Here, the complaint does not expressly raise any federal issues, nor does it claim a violation of a federal right. *See supra*. This fact strongly suggests that exclusive jurisdiction for this Article 78 proceeding, under the circumstances, lies in New York State Supreme Court.